UNITED STATES of America, Plaintiff-Appellant,

v.

Joseph John VALENTICH, a/k/a "Joe Valley", Defendant-Appellee.

No. 83–1597.

United States Court of Appeals, Tenth Circuit.

June 26, 1984.

David B.B. Helfrey, Atty., U.S. Dept. of Justice, Washington, D.C. (Robert N. Miller, U.S. Atty., Robert Gay Guthrie, Asst. U.S. Atty., D. Colo., Denver, Colo., Robert E. Mydans, Atty., U.S. Dept. of Justice, Washington, D.C., with him on the brief), for plaintiff-appellant.

Darol C. Biddle, Pueblo, Colo., for defendant-appellee.

Before SETH, C.J., and BREITENSTEIN and SEYMOUR, Circuit Judges.

SETH, Chief Judge.

This is an appeal taken by the Government under 18 U.S.C. § 3731 from a judgment of acquittal entered by the trial judge after a jury verdict of guilty.

The charge in Count I was under 26 U.S.C. § 5861(d), possession of an unregistered firearm, and in Count II under 26 U.S.C. § 5861(i), possession of a firearm without a serial number. The counts referred to the same "firearm" which was a silencer. The jury found defendant guilty on Count I and not guilty on Count II.

As mentioned, the trial court entered the judgment of acquittal after the verdict. The court stated the reason for granting the motion was the Government's failure to establish by adequate proof "possession" by defendant of the silencer as charged. It is apparent that the court was also then prepared to grant a new trial based on the display at trial by the Government of several guns apparently seized from the two persons who participated in the conversations but otherwise not connected. These guns had no connection with the silencer or the events relating to it. The trial court considered the action of the Government as contrary to *United States v. Warledo*, 557 F.2d 721 (10th Cir.). Of this the trial court said:

"If I didn't say that the improper use of the irrelevant evidence required a new trial, the Tenth Circuit would."

The court did not order a new trial, but proceeded to a consideration of the "possession" problem; that is, the definition of "possession." The court stated of the showing in the tapes or transcripts:

"There is no showing that defendant could have taken the silencer from the room; there is no showing that he could have directed what was to be done with it. The evidence shows only that he had the object in his hands for a few moments."

The court continued and concluded that the evidence did not show that defendant had "possession" as the word was used in the statute, and said:

"Valentich was not shown to have any power to direct nor to have a right to exercise a governing influence over the silencer. He held it in his hands for a little while and he talked about it. I don't think that he 'possessed' the silencer within the meaning of that word intended by Congress.... [T]he government went to the jury on the question of whether within Congress' intended meaning of the word 'possess', defendant had control of the silencer permitting him to 'exercising a governing influence over it.' The proof didn't show that he did, and although defendant may have been guilty of something, he wasn't shown to be guilty of possession of the silencer and it isn't a crime to associate with persons having a criminal record.... That's why I have already said that defendant would be entitled to a new trial if the motion for judgment of acquittal be denied, but the motion for judgment of acquittal is granted."

The Government's case at trial was based on several conversations which had been intercepted by electronic devices. The conversations took place in a basement office at Gaetano's Restaurant in Denver. The office was not that of the defendant who worked and lived in Pueblo, Colorado. The defendant was a visitor at the office. The participants in the conversations were the defendant, Eugene Smaldone and Paul Villano. The discussions were relatively short and concerned a silencer which was then being examined by the three persons. There is no way of telling who may have been holding the device at any time. Doubt was expressed in the conversations as to whether it would work and defendant was instructed by the others to take it to Pueblo and test it with 9mm ammunition which defendant said he had.

According to the transcripts of the conversations defendant was to return to the office several days later and take the device to Pueblo. Defendant was shown to be present at the time agreed that the silencer would be taken to Pueblo. This conversation consisted of admonitions as to what defendant should not do on the trip

and to be careful testing the device. There was nothing in the transcripts to show that defendant then had the device or took it anywhere. Days later two other participants in the conversation were followed by agents to Pueblo and were shown to be at a restaurant there. Defendant was not then seen in Pueblo by the agents, but the Government proved that his car was there.

There were no reported conversations thereafter. The agents, several months later, searched defendant's house in Pueblo and seized a 9mm handgun and some 9mm ammunition. Both were legal. The gun was not adapted to permit a silencer to be attached to it. There were then also searches of the residences of at least one other of the participants in the conversations and firearms were found.

The basement office at Gaetano's was also searched and a silencer was there seized. This was on August 12. The last intercepted conversation had been about May 18 and the surveillance of the other two participants at Pueblo was on May 21. The device so seized was introduced as Exhibit No. 11 and expert testimony was given that in fact it was a silencer and without a serial number. The experts were not able to say whether it had ever been used or when it was made. They testified that it was threaded to permit it to be attached to a gun barrel likewise threaded.

There was no evidence whatever to connect in any way Exhibit 11 and the defendant nor to show that this was the device which was the subject of the intercepted conversations several months before.

We must agree with the conclusion reached by the trial court that the Government failed to introduce evidence sufficient to establish possession of a silencer by defendant.

In addition there was no evidence that Exhibit 11 was the device which was the subject of the taped conversations, nor that the defendant was in any way connected with the exhibit.

The Government proved that several weapons unrelated to the charge had been seized, and that a legal 9mm gun and ammunition had been seized at defendant's place in Pueblo. The Government also proved beyond doubt, through a series of witnesses who had conducted surveillance, that defendant had from time to time associated with Eugene Smaldone and with Paul Villano.

The Supreme Court in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, described the standard or test to be applied in passing on a motion for acquittal under Rule 29 of the Rules of Criminal Procedure. We have also considered the matter before and after *Burks* in a series of ten or twelve cases including *United States v. White,* 673 F.2d 299 (10th Cir.). The Supreme Court in *Burks* said in part:

> "Even the trial court, which has heard the testimony of witnesses firsthand, is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal.... The prevailing rule has long been that a district judge is to submit a case to the jury if the evidence and inferences therefrom most favorable to the prosecution would warrant the jury's finding the defendant guilty beyond a reasonable doubt."

*See also United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642, and *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232.

Under these decisions and standards therein stated we must conclude that the judgment of acquittal was properly entered. There was no substantial evidence when all evidence was viewed in the light most favorable to the Government to support the decision made by the jury.

The evidence as to possession and the evidence as to Exhibit No. 11 required inferences to be added one to the other in order to develop even some circumstantial evidence. This is much too speculative to withstand the motion for acquittal.

The judgment of the trial court is AFFIRMED.